UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN MULLER,<br><br>        Plaintiff,<br><br>    v.<br><br>SYNDICATED OFFICE SYSTEMS, LLC (d/b/a CENTRAL FINANCIAL CONTROL), *et al.*,<br><br>        Defendants. | Case No. C17-1840 RSM<br><br>ORDER GRANTING MOTION TO COMPEL AND DENYING MOTION FOR PROTECTIVE ORDER |

## I. INTRODUCTION

THIS MATTER comes before the Court on Plaintiff's Motion to Compel Discovery Responses (Dkt. #21) and Defendants' Cross-Motion for Protective Order (Dkt. #22). Specifically, Plaintiff seeks to compel complete responses to a number of Interrogatories and production of documents in response to his Requests for Production. Dkt. #21. In response, Defendants move for a protective order, arguing that the information and documents sought are irrelevant, beyond the scope of the issues in this matter, privileged, and not proportionate to the needs of this case. Dkt. #22. For the reasons stated below, the Court disagrees with Defendant, GRANTS Plaintiff's motion to compel and DENIES Defendants' motion for protective order.

## II. BACKGROUND

This matter arises out of an attempted debt collection. In his Complaint, Plaintiff alleges as follows:

ORDER
PAGE - 1

8. In 2016, Plaintiff John Muller received a call from a medical assistant at FHS, who offered to provide "his" test results. Mr. Muller explained that he had not seen any medical providers at FHS, and learned that the medical assistant was actually seeking to contact someone named John Miller. Nevertheless, in a blatant violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the FHS representative began disclosing private patient information to Plaintiff.

9. When Mr. Muller explained that he was not the correct person, Mr. Muller was informed that he "needed" to contact the billing department, despite the mistake being made on the part of FHS.

10. Plaintiff thought no further of the incident until he applied for a Costco-affiliated credit card, and – despite having flawless credit – was denied. The reason for the denial was that Plaintiff had an active collection account on his credit report.

11. After many hours of work and inquiries, Plaintiff learned that SOS, operating under its doing-business-as-name Central Financial Control ("CFC"), was seeking to collect money from Plaintiff and had reported derogatory information to Plaintiffs credit reports.

12. Plaintiff contacted SOS/CFC in either late 2016 or early 2017 to learn about the nature of the debt. Over the course of several phone calls, SOS/CFC disclosed that the debt at issue was for medical services. Plaintiff ultimately connected the SOS/CFC collection activity to the FHS patient account.

13. On February 1, 2017, SOS/CFC sent Plaintiff a letter concerning his "dispute," wherein Plaintiff was told to provide his driver's license *and* social security card – by mail – to SOS/CFC in order to determine the status of the account. Plaintiff explained that he was not "John Miller," but SOS/CFC stated that Plaintiffs word was insufficient. *See* **Exhibit A**. The letter failed to include any required disclosures and/or notices.

14. On March 17, 2017, SOS/CFC sent a debt collection letter to Plaintiff, demanding immediate payment of $274.80. *See* **Exhibit B.**

15. The aforementioned letter (Exhibit B) violated HIP AA by disclosing private information belonging to a patient other than Plaintiff. This was disconcerting to Plaintiff, as he would not have wanted his personal information to be given to any third party.

16. Plaintiff ultimately was put in contact with various representatives of FHS, each of whom claimed that they would resolve the issue with the incorrect billing. Plaintiff was told that FHS's billing system simply mis-

identified Plaintiff as "John Miller" because Plaintiff's name was the "next-closest" name. This was very disturbing to Plaintiff.

17. Upon information and belief, the FHS representatives worked for Conifer Revenue Cycle Solutions, LLC ("Conifer"), who represented themselves as working for an entity named "Conifer Health Solutions," which is not a business entity licensed to do business in Washington State.

18. Relying on FHS/Conifer's representations, Plaintiff again applied for a Costco credit card and *again* was denied, as the derogatory credit reporting had not been removed as Defendants had promised.

19. Over the course of Plaintiff's many communications with FHS/Conifer, both FHS and Conifer repeatedly violated HIPAA by disclosing private patient information of a third party to Plaintiff.

20. In September 2017, Plaintiff was contacted by a representative of FHS/Conifer who attempted to induce Mr. Muller to resolve his issues for a nominal payment of money.

21. The proposed "settlement" agreement was purportedly from FHS and/or Conifer, but the terms were designed to release CFC. The proposed agreement did not acknowledge any wrongdoing on the part of any Defendant, and refused to acknowledge that Plaintiff was, in fact, not John Miller. The proposed agreement was, curiously, to be governed by Texas law.

22. The proposed agreement was objectively unfair, as it did not contain any reciprocal promises by Defendants to ensure that Mr. Muller would not be contacted again on the fictitious debt or that his credit report would be free from any such future reporting.

23. As part of the proposed settlement agreement, Defendants demanded that Plaintiff sign an I–9 Form from the Department of Homeland Security, presumably as a way to obtain Plaintiff's social security number and other personal information.

24. On information and belief, there is no objective reason why Plaintiff would have needed to fill out an I–9 Form in order to resolve anything with Defendants.

25. Plaintiff was extremely confused by the interactions of all three Defendants, as he could never determine exactly to whom he was speaking, nor could he determine the relationship between Defendants.

ORDER
PAGE - 3

26. In total, Plaintiff estimates that he spent nearly 20 hours of his personal time – away from his wife and newly-born child – simply correcting the error of Defendants' making. At no time did any Defendant attempt to take any responsibility for any actions, instead seeking to point fingers and blame others for the errors and mistakes.

27. Plaintiff remains concerned about his credit, as he has now seen that his credit can be impacted through the flagrant errors of third parties with whom he has no relationship.

28. Furthermore, Plaintiff remains concerned about his personal information and the possibility of identity theft, as Defendants continually sought to obtain Plaintiff's social security number, birthdate, and other personal information.

29. On information and belief, at all relevant times, Defendant SOS was acting at the direction of Conifer and FHS with respect to Plaintiff and the fictitious "account."

30. On information and belief, Defendants SOS and Conifer share common ownership.

31. As a result of Defendants' actions detailed above, Mr. Muller has had to retain counsel to ascertain his legal rights and responsibilities, which gives rise to expenses.

32. Far from being some mere annoyance, Mr. Muller spent approximately one year attempting to resolve this issue, and never knew whether he would again be contacted or pursued over someone else's debt. This took a large toll on Plaintiff, who wanted to ensure that he and his growing family had access to credit for access to housing and other necessities of life.

33. Mr. Muller suffered damaged credit, financial uncertainty, unease, distress, lack of sleep, and loss of time with his young family, caused by Defendants' actions, which were false, improper, and confusing.

Dkt. #1-1 at ¶¶ 8-33. Defendants admit that the debt obligation never belonged to Plaintiff, but assert that the error is due to the credit reporting agencies accidentally conflating the two men's accounts. Dkt. #22 at 4.

On February 6, 2018, Plaintiff served discovery requests, including Requests for Admission, Interrogatories, and Requests for Production, on Defendants. Dkt. #21-1 at ¶ 2.

ORDER
PAGE - 4

Defendants SOS and Conifer, both represented by the same counsel, repeatedly sought extensions, which were granted by Plaintiff. *Id*. at ¶¶ 3-5. Ultimately, Plaintiff granted a final extension to April 26, 2018. On that date, Plaintiff received responses to his requests for admission from both SOS and Conifer, but no other discovery responses. Dkt. #21-1 at ¶ 5. The same day, defense counsel also sent an email advising that the discovery responses would be provided the following day, although that did not occur. *Id*. at ¶ 6 and Ex. A thereto. On April 30, 2018, Defendants sent responses to Interrogatories and Requests for Production. *Id.* at ¶ 7 and Ex. B thereto. Those responses were comprised largely of objections, the answers to Interrogatories were not verified, and there were no documents attached in response to the Requests for Production. *Id.*

The parties met and conferred by telephone on May 8, 2018, but were unable to resolve any issues with discovery. *Id*. at ¶¶ 9-10. After the conference, defense counsel sent a letter to Plaintiff's counsel asserting that Defendants' discovery responses were adequate. *Id*. at ¶ 12 and Ex. C thereto. The instant motion followed.

### III.  DISCUSSION

**A. Legal Standards**

Under Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Oppenheimer Fund, Inc.*

ORDER
PAGE - 5

*v. Sanders*, 437 U.S. 340, 351, n.12, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)(*quoting* 4 J. Moore, Federal Practice ¶ 26.56 [1], p. 26-131 n. 34 (2d ed. 1976).

However,

> [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A)  forbidding the disclosure or discovery;
>
> (B)  specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C)  prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D)  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E)  designating the persons who may be present while the discovery is conducted;
>
> (F)  requiring that a deposition be sealed and opened only on court order;
>
> (G)  requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>
> (H)  requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. Proc. 26(c)(1).

///

///

ORDER
PAGE - 6

## B. Discovery At Issue

In his motion, Plaintiff now takes issue with the responses to his Requests for Production, as no responsive documents had been produced at the time his motion was filed, and any objections raised by Defendants, which he asserts were waived when Defendants failed to timely respond to the discovery requests. Dkt. #21 at 4. Plaintiff also takes issue with Defendants' assertion of privilege in response to Interrogatory No. 1 and several of the Requests for Production, and with the specific responses to Interrogatory Nos. 6, 7, 9, 13 and 14. *Id.* at 4-7.

As an initial matter, the Court addresses Plaintiff's argument that Defendants' objections to discovery have been waived. "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.1992) (*citing Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981)). This rule has been widely observed in this Court as well as in other district courts in this circuit. *See*, *Lim v. Franciscan Health Systems*, 2006 U.S. Dist. LEXIS 89487, 2006 WL 3544605 (W.D. Wash. 2006); *Arnett v. Ohio Nat. Life Assurance. Corp.*, 2006 U.S. Dist. LEXIS 80309, 2006 WL 3207044 (W.D. Wash. 2006); *Richardson v. Bryant*, 2010 U.S. Dist. LEXIS 71853, 2010 WL 2737132, *2 (E.D. Cal. 2010); *U.S. E.E.O.C. v. Morales*, 2010 WL 481395, *2 (E.D. Cal. 2010); *U.S. v. 2002 Toyota 4-Runner*, 2009 U.S. Dist. LEXIS 58883, 2009 WL 5184474, *1 (N.D. Cal. 2009); *Mission Capital Works, Inc. v. SC Restaurants, Inc.*, 2009 U.S. Dist. LEXIS 116165, 2009 WL 4895315, *3 (S.D. Cal. 2009). Defendants do not deny that their responses to Interrogatories and Requests for Production were untimely. *See* Dkts. #22 and #24. Instead, without any legal citation, they simply assert that they have not waived their objections because they concern relevance and burden. Dkt. #24 at 6.

Pursuant to Rule 33(b)(1)(B)(4), any untimely objection to the interrogatory is waived, unless the court excuses the failure for good cause. Defendants' conclusory and unsupported response is inadequate to demonstrate good cause.[1] Accordingly, this Court finds that all objections (with exception to privilege, which is separately addressed below) to the Interrogatories and Requests for Production have been waived.

With respect to Defendants' assertion of privilege, the Court recognizes that the untimely assertion of a privilege is a factor to be considered in assessing whether a party has waived such privilege, but notes that the Ninth Circuit has rejected a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within the time limits provided in Federal Rule of Civil Procedure 34 or in a pertinent agreement or order. *Burlington Northern & Santa Fe Railway Co. v. United States District Court for District of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005). Instead, a district court should make a case-by-case determination, taking into account the following factors: (1) the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged; (2) the timeliness of the objection and accompanying information about the withheld documents; (3) the magnitude of the document production; and (4) other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard. *Id*. These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process. *Id*.

---

[1] While Defendants assert they preserved their objections by moving for a protective order, the Court notes that their motion was not brought until after receiving, reviewing, seeking extensions of time to respond, and then partially responding to the discovery requests, and after Plaintiff's motion to compel. Thus, the Court finds that Defendants' motion, while not itself technically untimely, does not provide good cause to excuse its failure to timely object to the discovery requests.

ORDER
PAGE - 8

Having reviewed the record in this matter, the Court finds that while an Order compelling discovery is necessary at this time, it should not include a waiver of the privilege objection. However, Defendants should be aware that they have represented to the Court that a privilege log will be provided to Plaintiff by June 10, 2018, and the Court expects them to comply with that representation. *See* Dkt. #24 at 6.

Because the Court has determined that Defendants have waived all objections to Plaintiff's discovery requests, except for privilege, the Court finds that an Order compelling complete responses for the reasons set forth by Plaintiff in his motion is appropriate. *See* Dkts. #21, #25 and #26. For the same reasons, Defendants' cross-motion for a protective order is denied.

## IV.    CONCLUSION

Having reviewed Plaintiff's Motion to Compel, Defendants' Motion for Protective Order, the Responses in opposition thereto and Replies in support thereof, along with the supporting Declarations and exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion to Compel (Dkt. #21) is GRANTED as discussed above.

2. Defendants' Motion for Protective Order (Dkt. #22) is DENIED for the same reasons.

3. No later than **fourteen (14) days from the date of this Order**:

    a. Defendants SOS and Conifer shall provide full and complete answers, verified and without objection, to interrogatories 6, 7, and 9, with the understanding that Plaintiff does not object to certain third party information being redacted;

    b. Defendant Conifer shall provide full and complete answers, verified and without objection, to interrogatories 13 and 14, with the understanding that Plaintiff does not object to certain third party information being redacted;

c. Defendants SOS and Conifer are to provide full and complete responses, including any responsive documents, to each of Plaintiff's Requests for Production, with the understanding that Plaintiff does not object to certain third party information being redacted; and

d. Defendants shall provide their privilege log to Plaintiff **no later than June 10, 2018.** Nothing in this Order precludes Plaintiff from moving with respect to specific privilege assertions if he feels such a motion is necessary after reviewing the Privilege logs and engaging in the required meet-and-confer.

DATED this 8th day of June 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE